UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

   UNITED STATES OF AMERICA,

   v.

   CARL LIEDKE,

                       Defendant.

-------------------------------------------------------X

**MEMORANDUM OPINION
AND ORDER**

08-CR-00653 (PMH)

PHILIP M. HALPERN, United States District Judge:

     Defendant Carl Liedke ("Liedke"), has filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that he is at increased risk of severe illness should he contract the COVID-19 virus. (Doc. 32, "Motion"). Liedke is currently serving a 188-month sentence at FCI Elkton, a low-security federal correctional institution with an adjacent low-security satellite prison, after having been convicted of receipt and distribution of child pornography in December 2008 following his guilty plea pursuant to a plea agreement. For the reasons set forth below, the Court concludes that a reduction in Liedke's sentence would neither be "consistent with the applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), nor be supported by the "factors set forth in section 3553(a)," *id.* § 3582(c)(1)(A). Accordingly, the motion is DENIED.

## **BACKGROUND**[1]

     As part of a "sting" operation conducted by the Federal Bureau of Investigation ("FBI"), a detective from the Westchester County Police Department ("Detective") set up two America

---

[1] The Court draws the background facts principally from then-Chief Judge Preska's Memorandum and Order dated May 13, 2015 (Doc. 27, "Prior Ord."); the Government's response to the Motion (Doc. 37, "Gov't Opp."); and the Presentence Investigation Report dated April 21, 2009 and Addendum thereto dated May 8, 2009, prepared in this case in connection with Liedke's sentencing ("PSR").

Online ("AOL") undercover profiles ("Profile l" and "Profile 2"). (Prior Ord. at 2; PSR ¶¶ 6-7).

Profile 1 described a fifteen-year-old female who lived in Westchester County, New York, and

Profile 2 described a fifteen-year-old female who lived in the tri-state area. (PSR ¶ 7). Using these

profiles, the Detective periodically visited a special interest chatroom called "I Love Older Men,"

posing as an underage teenage female. (*Id*. ¶¶ 7, 8; Prior Ord. at 2). Between February and April

2008, Liedke visited the "I Love Older Men" chatroom, and contacted Profile 1 via Instant

Message ("IM"), online conversations, and by telephone. (PSR ¶¶ 8a-8h). During his conversations

with Profile 1, Liedke sent multiple pictures of his penis and over fifty images containing child

pornography via email; extended multiple invitations to his apartment to have sex; and offered to

pick up Profile 1 in his car. (*Id*.; Prior Ord. at 2-3; Gov't Opp. at 2).

Liedke also contacted Profile 2 via IM in early April 2008, again through the chatroom "I

Love Older Men." (PSR ¶ 8f). Liedke asked if Profile 2, an individual he believed to be fifteen

years old, would like to "hook up" with a man his age and offered to send a photograph of his

penis. (PSR ¶ 8f). From April 28 through April 30, 2008, Liedke contacted Profile 2 via IM and

attempted to arrange for her to visit his apartment for the purpose of engaging in sexual intercourse.

(*Id*.). Liedke informed the minor that he bought her "[T]rojan extra thin" condoms and "your pills."

(*Id*. ¶ 8i).

On May 7, 2008, law enforcement officers executed a search warrant on Liedke's

residence. (*Id*. ¶ 10). Among other items, his laptop computer, a cell phone, Trojan extra thin

condoms, and birth control pills were seized from his residence. (*Id*.). Liedke admitted these items

were his, that he had possessed and sent by e-mail several images containing child pornography,

that he had engaged in conversations with Profile 1 and Profile 2, and that he knew that Profile 1

and Profile 2 were under the age of eighteen. (*Id.* ¶¶ 10-12). Liedke was arrested on a criminal complaint on May 8, 2008. (*Id.* ¶¶ 11, 15).

On or about July 17, 2008, a grand jury returned a two-count indictment charging Liedke with (i) receiving and distributing, via email, material containing child pornography that had been transported in interstate or foreign commerce, in violation of 18 U.S.C. § 2252A(a)(2)(B) ("Count One"); and (ii) using means of interstate or foreign commerce to attempt to persuade, induce, and entice an individual who had not attained the age of eighteen years to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). (Doc. 6, "Indictment"). On December 3, 2008, Liedke entered into a written plea agreement and pled guilty to Count One of the Indictment, receipt and distribution of child pornography. (Doc. 21-2 at 20-24, "Plea Agreement"). Liedke and the Government stipulated in the Plea Agreement that Liedke's Guidelines range was 188 to 235 months' imprisonment (the "Stipulated Guidelines Range"). (PSR ¶ 5j; Plea Agreement at 2-3). As part of the Plea Agreement, Liedke also agreed that he would "not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Guidelines Range set forth above (188 to 235 months' imprisonment)." (PSR ¶ 5l; Plea Agreement at 4). On January 20, 2009, Magistrate Judge Yanthis issued a report and recommendations on Liedke's guilty plea, which found that Liedke's plea was knowing and voluntary and supported by an independent basis in fact. (Doc. 11). On February 13, 2009, Judge Robinson issued an order which adopted Magistrate Judge Yanthis's report and recommendations and accepted Liedke's guilty plea. (Docs. 14).

On June 16, 2009, Liedke appeared before Judge Robinson for sentencing. Liedke requested a non-Guidelines sentence because of his personal history and age (Doc. 21-2 at 25-34, "Sentencing Tr."). However, after addressing the nature and circumstances of the offense, and the history and characteristics of the defendant, the Court sentenced Liedke to a term of 188 months' imprisonment to

be followed by a term of five years of supervised release. (*Id.* at 13:19-15:9). Liedke's projected release date, according to the Government, is September 13, 2021. (Gov't Opp. at 4; https://www.bop.gov/mobile/find_inmate/index.jsp#inmate_results (last visited January 11, 2021)).

On June 26, 2009, Liedke filed an appeal to the Second Circuit. (Doc. 17). The conviction and sentence were affirmed by summary order issued on October 20, 2011. (Doc. 19). On January 16, 2013, Liedke filed a *pro se* petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Doc. 20), which was denied by Judge Preska on May 13, 2015 (Prior Ord. at 1, 27). Liedke's subsequent appeal of Judge Preska's Memorandum and Order (Doc. 27) was similarly unsuccessful (Docs. 30, 31).

In 2019, Liedke, through his son's mother, filed a motion with the Bureau of Prisons ("BOP") for compassionate release to care for his adult son, which was denied. (Motion at 10). In 2020, Liedke filed another motion for compassionate release with the BOP for a reduction of sentence based on certain COVID-19 risk factors—his age (73), his pre-existing conditions (hypertension and type II diabetes), and overcrowding at FCI Elkton—and the need to care for his adult son. (Motion at 4, 8). That motion was denied on April 27, 2020. (Gov't Opp. at 5; Motion at 4, 8). According to Liedke, he appealed the April 27, 2020 denial to "the BOP Northeast [and] Central offices" but did not await a response prior to filing the instant motion.

On June 5, 2020, Liedke filed the instant motion for compassionate release. (Doc. 32). On December 14, 2020, I was reassigned to this case. On December 17, 2020, I issued an Order permitting the Government to file a response to the Motion (Doc. 36), which was filed on January 5, 2021 (Doc. 37).

## STANDARD OF REVIEW

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). Compassionate release is one of the limited exceptions enumerated in 18 U.S.C. § 3582(c). Under the First Step Act, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal [or] a failure of the [BOP] to bring a motion on the defendant's behalf," a court may reduce a defendant's sentence, on a defendant's motion, if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). "The moving party bears the burden of proving that extraordinary and compelling reasons exist." *United States v. Rodriguez*, No. 19-CR-12, 2020 WL 2787629, at *3 (S.D.N.Y. May 28, 2020).

"[T]he existence *vel non* of 'extraordinary and compelling reasons' determines only whether a defendant can be considered for release—the existence of such reasons does not mandate release." *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020); *see also United States v. Israel*, No. 05-CR-1039, 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019) ("A court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such reduction because of his medical condition. . . . [Section 3582] was drafted using the word 'may,' not 'must.'"). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

In other words, the statutory scheme requires first that a court determine that a defendant has exhausted his administrative remedies, that "extraordinary and compelling" reasons exist for a reduction in sentence, and that such reduction is consistent with the applicable policy statements

issued by the Sentencing Commission. Once these elements are met, the Court must then consider and determine whether that the § 3553(a) factors support early release. Application of the § 3553(a) factors requires an assessment of whether the relevant factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence." *Ebbers*, 432 F. Supp. 3d at 431. Those factors include, among others: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a).

## ANALYSIS

As to Liedke's failure to await an appeal result from the BOP's denial of his compassionate release motion, the Government does not dispute Liedke has satisfied the exhaustion requirement of § 3582(c)(1)(A), and has thus effectively waived that argument. (Gov't Opp. at 6 ("Liedke has demonstrated exhaustion of administrative remedies")); *see also United States v. Gentille*, No. 19-CR-590, 2020 WL 1814158, at *3 (S.D.N.Y. Apr. 9, 2020) ("The Court agrees with the Government that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, but rather is a claims-processing rule that the Government can waive by failing to raise an exhaustion argument."). Thus, I do not consider the issue of exhaustion of administrative remedies.

As to the merits of Liedke's motion, with respect to "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1)(A)(i), the Sentencing Commission has issued a Policy Statement setting forth certain definitions. U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) ("U.S.S.G."); *see Ebbers*, 432 F. Supp. 3d at 426. While Liedke's advanced age, diabetes, and hypertension do not place him squarely within any of the Policy Statement's

definitions of "extraordinary and compelling reasons," *see* U.S.S.G. § 1B1.13 cmt. n.1(A)-(D),[2] Liedke asserts that the COVID-19 pandemic, combined with his particular vulnerability to complications from COVID-19 because of these underlying ailments, constitutes an "extraordinary and compelling" reason for his release. (Motion at 2). The Government does agrees with this assertion as well. (Gov't Opp. at 6 ("Liedke has demonstrated . . . 'extraordinary and compelling reasons'")).

The Court accepts that the COVID-19 pandemic could qualify as an "extraordinary and compelling" reason for this defendant, as he is of advanced age, and suffers from type II diabetes and hypertension. These preexisting conditions would likely place him at higher risk of complications should he contract COVID-19. *See People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated Jan. 4, 2021) (identifying individuals aged 65-74 years as having a five-times higher chance of being hospitalized and ninety-times higher chance of death if they contract COVID-19; and "[a]dults of any age . . . are at increased risk of severe illness" from COVID-19 if they have type II diabetes). Liedke, however, has failed to establish that his release to an apartment in Canadensis, Pennsylvania, puts him at a lower risk of contracting COVID-19 than if he were to remain in custody at FCI Elkton. *See, e.g.*, *United States v. Sanchez*, No. 18-CR-833, 2020 WL 2787654, at *5-7 (S.D.N.Y. May 29, 2020) (finding that defendant failed to meet burden of establishing that there exist extraordinary and compelling reasons to grant early release based upon the fact that defendant failed to provide

---

[2] On motion brought by a defendant as opposed to the BOP Director, like here, the Court is not constrained to the definitions set forth in the policy statement, and has discretion "to determine what reasons, for purposes of compassionate release, are extraordinary and compelling." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

details concerning, *inter alia*, levels of community spread and death where the jail is located compared to where the building is located).

FCI Elkton reports four positive COVID-19 cases and nine deaths among inmates, and twenty-eight positive COVID-19 cases among staff. *See Federal Bureau of Prisons COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited January 11, 2021). While Liedke does not offer statistics concerning Canadensis, Pennsylvania, the Government notes that "Pennsylvania . . . is 'in the midst of a spike in positive cases,' reporting '665,097 positive COVID-19 cases' in the state." (Gov't Opp. at 7) (citing https://www.health.pa.gov/topics/disease/coronavirus (last visited January 4, 2021)). Liedke requests that he be permitted to live with his adult son, who has epilepsy, but fails to provide details concerning his son's contact with others, and any hygiene protocols his son may follow; and fails to provide information about the proposed residence, an apartment in Canadensis, Pennsylvania, and whether there are any COVID-19 protocols in place to mitigate the spread of the virus in that building. *See Sanchez*, 2020 WL 2787654, at *7 (burden not met where defendant failed to provide details concerning the building defendant intended to reside in with his wife; whether residents of the building had COVID-19 and what steps, if any, the building was taking to mitigate the spread; his wife's contact with others and any hygiene protocols she may follow; and levels of community spread and death where the jail is located compared to where the building is located). Thus, Liedke has failed to meet his burden of proving that "extraordinary and compelling" reasons exist.

Moreover, granting Liedke a reduction in sentence would neither be "consistent with the applicable policy statement issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), nor be supported by the "factors set forth in section 3553(a)," *id.* § 3582(c)(1)(A). In other words, even if the Court found Liedke's application sufficient to establish "extraordinary and compelling"

reasons, the Sentencing Commission policy statement also requires that the Court find that "the defendant is not a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2); and the Court's determination must then also be supported by the "factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). This the Court cannot do.

Liedke has failed to address, much less sustain, his burden of proof that a reduction would be consistent with the applicable policy statement that he is not a danger to the safety of any other person or to the community. He targeted minors for sex and distributed child pornography depicting sadistic and violent acts against minors. (PSR ¶¶ 5, 7-14, 23; Plea Agreement at 2). As Judge Robinson stated, Liedke "victimize[d] children" for "his own pleasure." (Sentencing Tr. at 14:4-10). Liedke does not suggest that since Judge Robinson's findings at his sentencing he is no longer a danger to the community or incapable of engaging in the same type of behavior that led to his incarceration. *Cf.*, *United States v. Asaro*, No. 17-CR-127, 2020 WL 1899221, at *1, *7 (E.D.N.Y. Apr. 17, 2020) (granting compassionate release to a previously violent defendant because his physical ailments, including expressive aphasia, made it unlikely that he remained capable to orchestrate complex criminal schemes); *United States v. Willis*, 382 F. Supp. 3d 1185, 1189 (D.N.M. 2019) (granting compassionate release to a blind, wheelchair-bound defendant who required round-the-clock care and had an estimated eighteen months to live).

In addition, and again assuming Liedke had made a sufficient showing regarding "extraordinary and compelling" reasons, and established that his release would be consistent with the applicable policy statement, Liedke's Motion does not speak to the § 3553(a) factors, which I also must consider on this application. These factors, such as "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate

deterrence to criminal conduct" weigh against Liedke's early release. 18 U.S.C. § 3553(a). Liedke targeted and victimized a vulnerable population. He distributed child pornography and sent pictures of his genitalia to females he believed to be fifteen years old in an effort to entice these minors to have sex with him. He attempted to meet these minors with condoms and birth control pills. The Court simply cannot conclude that the application of the § 3553(a) factors favors an early release. *See Hope*, 464 F. Supp. 3d at 648-651 (denying compassionate release despite defendant's higher COVID-19 risks due to parapalegia and underlying ailments, in light of conviction for, *inter alia*, sex trafficking a minor and possession of child pornography); *United States v. Schultz*, No. 17-CR-193, 2020 WL 2764193, at *8 (W.D.N.Y. May 28, 2020) (denying compassionate release request predicated upon defendant's asthma and presence of COVID-19 cases at FCI Elkton where defendant was housed, in light of conviction arising out of defendant's sexually explicit online chats with an undercover law enforcement officer whom he believed to be a fifteen-year-old female); *United States v. Lebrecht*, No. 16-CR-166, 2020 WL 2519721, at *3 (W.D.N.Y. May 18, 2020) (denying compassionate release to defendant convicted of possession of child pornography housed at FCI Elkton, in light of danger to the community as demonstrated by his online chats and other underlying offense conduct, and despite the fact that defendant was close to the end of his prison sentence). Under these circumstances, Liedke's health considerations are outweighed by the § 3553(a) factors that militate in favor of his continued detention.

## <u>CONCLUSION</u>

Accordingly, Liedke's Motion is DENIED. The Clerk of Court is respectfully directed to terminate the pending motion (Doc. 32), and to mail a copy of this Memorandum Opinion and Order to Defendant  at #84999-054, Federal Satellite Low Elkton, P.O. Box 10, Lisbon, OH 44432.

**SO ORDERED:**

Dated: New York, New York
      January 13, 2021

_____

Philip M. Halpern
United States District Judge